IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 11 |
| | ) | |
| KCMVNO, INC. (f/k/a Movida Communications, Inc.), | ) ) | Case No. 08-10600 (BLS) |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |

## **OPINION**[1]

Before the Court is a Motion for Relief from the Automatic Stay [Docket No. 238] (the "Motion") filed on July 15, 2008 by Brightstar US, Inc. ("Brightstar"), a creditor of KCMVNO, Inc. (f/k/a Movida Communications, Inc.) (the "Debtor"). The Motion contends that Brightstar has a valid and perfected vendor's lien in certain cellular handsets and accessories (the "Inventory"), and seeks relief from the automatic stay so that Brightstar may enforce its rights against the Inventory. The Debtor objected to the Motion on July 28, 2008. Objections to the Motion were also filed by the Official Committee of Unsecured Creditors (the "Committee") and Plainfield Direct, Inc. ("Plainfield"), an administrative and collateral agent for several lenders under a Credit Agreement in the case, on July 28, 2008.

For the following reasons, the Court will deny the Motion.

---

[1] This Opinion constitutes the findings of fact and conclusions of law of the Court pursuant to Federal Rule of Bankruptcy Procedure 7052.

## I.   BACKGROUND

Brightstar purchases cellular handsets and accessories from manufacturers and resells them to distributors. These handsets, however, are not immediately suitable for direct sale to the public when they are first acquired by Brightstar. Instead, the distributors must first compile and package a "kit" that includes the handset, a charger, manuals, and additional accessories. This kit is then packaged for distribution. Brightstar's fulfillment services include creating and packaging a kit for each handset sold.

Prior to filing for Chapter 11 relief, the Debtor entered into a sales and fulfillment agreement (the "Contract") with Brightstar regarding the sales of handsets to the Debtor from Brightstar. The Contract was executed November 12, 2007. The Contract provided that the "Agreement and the rights and obligations of the parties hereunder shall be construed in accordance with and be governed by the laws of the State of Florida, without regard to conflict of law provisions." (Contract at § 13.13).

The Contract called for Brightstar to sell handsets to Debtor, and to provide fulfillment services to prepare those handsets for resale. Upon receipt of those handsets, Brightstar would send an invoice to the Debtor for the sale of the handsets; upon the transmission of that invoice, title to the handsets passed to the Debtor. Brightstar would then segregate the Debtor's handsets in

its warehouse, and await instructions from the Debtor regarding fulfillment, which would change depending on the Debtor's ultimate customer.  Once the Debtor found a purchaser for the handsets and communicated its fulfillment needs to Brightstar, Brightstar would compile the kit, ship the product, and send an invoice to Debtor for its fulfillment services.  Under the terms of the Contract, payment on each invoice was due within 60 days of the invoice date.

At the time of the Debtor's bankruptcy filing, Brightstar was owed $4,720,624.19 by the Debtor pursuant to the Contract. (Motion at 3, ¶ 4).  This figure purportedly represents the amount owed by the Debtor for the Inventory which Brightstar currently has on hand. (Id.).

Brightstar alleges that the value of the Inventory has decreased significantly since the Debtor's filing because the "vast majority" of the Inventory is related to discontinued handsets, and because the remainder of the Inventory has experienced a drop in market price because a surge of insolvencies in this sector has caused a large number of handsets to be sold at liquidation prices. (Motion at 3, ¶ 5).  Brightstar estimates that because of these factors, it would only realize approximately $900,000 from sales of the Inventory in the ordinary course of its business.  (Id.). Concerned that the value of the Inventory will continue to depreciate, and frustrated by the ongoing need to store the Debtor's Inventory in its warehouse, Brightstar filed the Motion in

order to seek relief from the automatic stay so that it may sell the Inventory.

The Debtor objects to the Motion on the grounds that Brightstar has no lien against the Inventory because, under controlling Florida law, the equitable remedy of a vendor's lien can only be created in real property, and not in personal property. Moreover, Debtor contends that even if Brightstar did possess the vendor's lien it claims, then: (i) the lien would be subordinated to a security interest in all of Debtor's Inventory held by Plainfield, and (ii) under the Bankruptcy Code and relevant state law, the lien is avoidable by the Debtor pursuant to its status as a hypothetical judicial lien creditor under section 544 of the Bankruptcy Code.  Finally, the Debtor argues that in asserting a valid and perfected vendor's lien against the Inventory, Brightstar in effect challenges Plainfield's security interest.  Debtor contends that pursuant to the terms of the Final Cash Collateral Order, any challenges to the Plainfield security interest are foreclosed, except with respect to the Committee.

Plainfield and the Committee both join these arguments, each incorporating them by reference in their respective objections. The Committee also makes an additional procedural argument, contending that the Motion can only be properly placed before the Court in an adversary proceeding.

This matter has been fully briefed and argued.  It is ripe for

decision.

## II. JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157(a) and (b)(1). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. Consideration of this matter constitutes a "core proceeding" under 28 U.S.C. § 157(b)(2)(A), (G) and (K).

## III. DISCUSSION

Florida's courts have long recognized the concept of an implied "vendor's lien" under Florida law. See Bradford v. Marvin, 2 Fla. 463 (Fla. 1849) (establishing the equitable remedy of a vendor's lien under Florida law). Florida's courts have repeatedly stated that this type of equitable lien "is a right which the law by implication accords to the *grantor of land*, who has conveyed the title, and reserved no express lien, and has taken no security for the purchase money other than the personal obligation of the grantee, to subject the land in equity to the payment of the unpaid purchase price." See Brownlow v. W.T. Harrison, Inc., 135 So. 848, 850 (Fla. 1931) (citing De Long v. Marshall, 63 So. 723, 724 (Fla. 1913)) (emphasis added). See also Lake Placid Holding Co. v. Paparone, 508 So.2d 372, 377 (Fla. Dist. Ct. App. 1987) (defining a vendor's lien as a charge or encumbrance upon land).

Despite the fact that Florida's courts repeatedly define a vendor's lien by reference to real property, Brightstar contends that Florida law also allows the imposition of a vendor's lien against personal property. The only authority Brightstar cites for this proposition, however, is the case of Malone v. Meres, 109 So. 677 (Fla. 1926).

The Malone court was not tasked with deciding whether a vendor's lien should be imposed or enforced in the case, however. Rather, because no appeal of a lower court's decision entering a foreclosure decree was timely filed, the only issue before the court was whether the lower court, sitting in equity, had jurisdiction to enter the decree. The majority held that the simple act of a party asserting the claim of a lien gave the court jurisdiction, regardless of whether the facts of the case justified a finding that a valid lien existed.[2] Therefore, any suggestion in Malone that a vendor's lien might be imposed against personal property under Florida law is nothing more than dicta.

In fact, the parties do not cite – and the Court cannot find – a single decision in which the Florida Supreme Court has ever held that a vendor's lien can be imposed against personal property. Moreover, only one Florida appellate court has

---

[2] Consequently, the majority concluded that "[w]hether the provisions of the instrument in this case tend to show a conditional sale with a stipulated remedy for breach, rather than a right to a lien, need not be discussed." Id. at 688.

embraced this notion, and the facts presented to that court are easily distinguished from the case at bar.

In Oliver v. Mercaldi, 103 So. 2d 665 (Fla. Dist. Ct. App. 1958), a Florida appeals court imposed a vendor's lien against the sale of a lease of real property, despite the fact that Florida law defined such a lease as personal property at the time of the decision.  Critical to this decision, however, was the fact that the Florida Supreme Court had previously recognized a lease of real property "as conveying an 'interest in land.'" Id. at 668.  After defining a vendor's lien as "that lien which in equity is implied to belong to a vendor for the unpaid purchase price of land sold by him where he has not taken any other lien or security for the same, beyond the personal obligation of the purchaser," id., the court extended the application of a vendor's lien to the sale of a lease of real property.  This holding resulted despite the fact that the sale was technically a transfer of personal property, because both the sale of land and the sale of a lease in land shared the common characteristic of being the transfer of an "interest in land."

If Florida law contemplated imposing vendor's liens against personal property, the "interest in land" analysis used in Oliver would not have been necessary.  The court in Oliver would have simply imposed the vendor's lien against the lease in the same manner in which Brightstar requests this Court to impose such a

7

lien against the Inventory of Debtor that is currently in its possession – personal property that indisputably does not involve the transfer of an interest in land.  The fact that the <u>Oliver</u> court did not take this path is illustrative.

Given this analysis, the Florida courts' repeated definition of a vendor's lien as arising solely with reference to "land," and the lack of even a single case in which a Florida court has imposed a vendor's lien against personal property that did not involve the transfer of an interest in land, the Court holds that Florida law only permits the equitable remedy of a vendor's lien to be imposed against land or personal property transferring an interest in land, such as the lease in <u>Oliver</u>.

Because the Court concludes that Florida law does not allow for the imposition of a vendor's lien against the Inventory, Brightstar has no recognized rights in the Inventory and the Court therefore cannot grant the Motion.  Accordingly, the Court does not address the other objections raised by the Debtor, the Committee, or Plainfield against the Motion.

**IV.  CONCLUSION**

For the foregoing reasons, the Court will deny the Motion.  An appropriate Order follows.

                                    By the Court,

Dated: October 20, 2008         Brendan Linehan Shannon
                                       United States Bankruptcy Judge